## THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **RUSSELL CARBONE and JOSEPH G. CARBONE,** | **Case No. 20-307 (CLW)** |
| **Plaintiffs,** | |
| **v.** | **OPINION** |
| **JOHN S. CARBONE, ESQ.** | |
| **Defendant.** | |

## CATHY L. WALDOR, U.S.M.J.

This matter comes before the Court upon Defendant John S. Carbone, Esq.'s motion for

summary judgment, (ECF No. 90), and Plaintiffs Russell Carbone and Joseph G. Carbone's cross-

motion to strike. (ECF No. 92). The parties consented to the undersigned's authority to conduct

all proceedings in this matter. (ECF No. 83). In accordance with Federal Rule of Civil Procedure

78 and Local Civil Rule 78.1, the Court resolves the parties' applications without oral argument.

Upon careful consideration of the record for this matter, and for good cause shown, and for the

reasons discussed herein, Defendant's motion for summary judgment is **GRANTED IN PART**

**AND DENIED IN PART**. Plaintiffs' cross-motion to strike is **DENIED AS MOOT**.

### I.    RELEVANT FACTUAL BACKGROUND[1]

Plaintiffs Russell Carbone, Joseph G. Carbone and Defendant John S. Carbone, Esq. are

brothers, and the children of Salvatore and Eleanor Carbone ("Eleanor"). (Def. Statement of Facts

---

[1] Unless otherwise noted, the factual background discussed herein is adapted from portions of
Defendant's Statement of Undisputed Material Facts that are borne out by Defendant's supporting
citations and that Plaintiffs either expressly admitted or failed to adequately counter with relevant
citations to the record.

¶ 1, ECF No. 90-2). For most of their childhood, the parties resided with their parents at 532 Ryeside Avenue, New Milford, New Jersey (the "Property").

Salvatore Carbone became sick and, as Defendant was the only one of the three children who lived nearby the Property, he "assisted Eleanor with certain household tasks like mowing the lawn, cooking, or clearing, and on occasion he would take her to doctor's appointments or grocery shopping." (*Id.* ¶ 25-26; Plaintiffs' Responsive Counterstatement of Material Facts ¶ 7, ECF No. 93). Salvatore ultimately died in 2009, survived by Eleanor and their three sons. (Def. Statement of Facts ¶ 3, ECF No. 90-2). While Defendant continued to provide similar aid to Eleanor thereafter, she "lived independently" (including maintaining her driver's license and driving herself around, as necessary) and did not require "daily or even routine care from the Defendant or anyone else" until 2017, when she moved into a Care-One senior living facility. (*Id.* ¶¶ 27-29).

On or about March 17, 2010, Eleanor executed a deed transferring the Property to Defendant for less than $100. (*Id.* ¶ 4; Cert. of John Carbone, Ex. A, ECF No. 90-3). Eleanor's attorney, Francis Terrance Perna, Esq., prepared the deed and witnessed its execution. (Def. Statement of Facts ¶ 5, ECF No. 90-2). The deed itself did not include any restrictions, limitations, or conditions on Defendant's ownership interest in the Property. (Def. Statement of Facts ¶ 3, ECF No. 90-2). Nor were any other agreements or documents prepared at or around the time of the transfer concerning Defendant's rights or obligations concerning the Property. (*Id.* ¶ 7). Eleanor continued living at the Property until she moved to the Care-One facility in 2017. (*Id.* ¶ 24). She also continued paying the taxes for the Property post-transfer. (Plaintiffs' Responsive Counterstatement of Material Facts ¶ 5, ECF No. 93).

Defendant sold the Property to 532 Ryeside, LLC in February 2019 for the sum of $295,000. (Def. Statement of Facts ¶ 31, ECF No. 90-2; Cert. of John Carbone ¶ 21, Ex. G, ECF

No. 90-3).  On or about April 4, 2020, Eleanor executed a "Trust Document for Real Property" purporting to retroactively demonstrate her intentions and Defendant's obligations regarding the March 2010 transfer of the Property and for the distribution of proceeds from of any sale of the Property (the "2020 Trust Document").  (Plaintiffs' Responsive Counterstatement of Material Facts ¶ 18, ECF No. 93; Ex. A, ECF No. 93-1).  That document specified, in relevant part, that Defendant was to hold the Property in trust, and to distribute the net proceeds of any sale as follows:  50% to Defendant, 25% to Plaintiff Russel Carbone, and 25% to Plaintiff Joseph G. Carbone.  (Plaintiffs' Responsive Counterstatement of Material Facts, Ex. A, ECF No. 93-1).  Though neither side addressed the issue directly, nothing in the motion record suggests that Defendant has given Plaintiffs any portion of the proceeds from his February 2019 sale of the Property.

## II.    RELEVANT PROCEDURAL HISTORY

Based on their allegations concerning Eleanor's 2010 transfer of the Property to Defendant, Defendant's sale of the Property in 2019, and Defendant's failure to distribute any portion of the proceeds from that sale to Plaintiffs, Plaintiffs commenced this matter by filing a Complaint in the United States District Court for the Eastern District of New York on May 10, 2019.  (ECF No. 1).  On July 29, 2019, Plaintiffs filed an Amended Complaint, (ECF No. 7), which remains their operative pleading to date.  Plaintiffs have asserted the following nine causes of action:  Breach of Trust and Fiduciary Duty (Count One); Undue Influence (Count Two); Accounting (Count Three); (Breach of Implied Covenant of Good Faith and Fair Dealing (Count Four); Waste (Count Five); Fraud (Count Six); Conversion (Count Seven); Unjust Enrichment (Count Eight); and Constructive Trust (Count Nine).  (Am. Compl. ¶¶ 41-51).  On or about January 8, 2020, the Eastern District of New York transferred the case to this District upon Defendant's informal

application and over Plaintiffs' objection.  (ECF Nos. 20-23).  The parties thereafter engaged in discovery for the next several years, with the Court holding regular conferences and providing assistance as necessary.  By Order dated December 12, 2024, the undersigned noted that discovery was closed and directed the parties to file any motions for summary judgment by January 31, 2025.  (ECF No. 88).

On January 30, 2025, Defendant filed a motion seeking summary judgment on all nine of Plaintiffs' causes of action.  (ECF No. 90).  Plaintiffs opposed that motion and filed a cross-motion asking the Court to strike certain portions of Defendant's submission pursuant to Federal Rule of Civil Procedure 12(f).  (ECF Nos. 92-93).  Both motions are fully briefed, (ECF Nos. 94-95), and ripe for resolution.

### III.   LEGAL DISCUSSION

#### a.   Summary Judgment Standard

A party is entitled to summary judgment pursuant to Federal Rule of Civil Procedure 56 when it "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A factual dispute is material when it 'might affect the outcome of the suit under the governing law,' and genuine when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Ewing v. Cumberland Cnty.*, 152 F. Supp. 3d 269, 288 (D.N.J. 2015) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).  A party moving for summary judgment must support its position by directing the Court to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  "Once a properly supported motion for summary judgment is made, the burden shifts to the non-moving

party, who must set forth specific facts showing that there is a genuine issue for trial", *Ewing*, 152 F. Supp. 3d at 287 (citing *Anderson*, 477 U.S. at 250); *accord Indus. Corner Corp. v. Pub. Serv. Mut. Ins. Co.*, No. 20-cv-06677 (KM), 2023 WL 1860626, at *4 (D.N.J. Feb. 8, 2023) ("the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party."), and not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A party's speculation, conclusory allegations, and unsupported assertions cannot create questions of material fact sufficient to withstand summary judgment. *E.g.*, *Venneman v. BMW Fin. Servs. NA, LLC*, 990 F. Supp. 2d 468, 471 (D.N.J. 2013) (citing *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999)).[2]

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson, 477 U.S. at 255)*. Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *O'Toole v. Tofutti Brands, Inc.*, 203 F. Supp. 3d 458, 463 (D.N.J. 2016) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986)). "'If reasonable minds could differ as to the import of the evidence,' however, summary judgment is not appropriate." *Id.* (quoting *Anderson*, 477 U.S. at 250-51).

---

[2] In the District of New Jersey, the parties must present the facts and evidence relevant to the summary judgment proceedings in statements prepared in accordance with Local Civil Rule 56.1 (requiring, among other things, that the parties address the relevant facts in separately numbered paragraphs, with appropriate citations to the record in support of each).

### b.  **Motion to Strike**

In his motion for summary judgment and supporting papers, Defendant references Plaintiff Russell Carbone's criminal history and disbarment, suggesting that, because Plaintiffs rely on their own testimony to support their claims, "it is incumbent upon this Court to consider the relevancy and probative value of [Russell's history] in assessing the sufficiency and reliability of" that testimony.  (Def. Br. at 17-18, ECF No. 90-1).  Plaintiffs argue that the Court should strike those arguments and the materials that Defendant has cited in support pursuant to Federal Rule of Civil Procedure 12(f).  That Rule provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f).  Neither party cites case law addressing the propriety of using Rule 12(f) in the context of a motion for summary judgment.

The Court finds that it need not reach the merits of Plaintiffs' cross-motion.  As noted above, the Court may not assess witness credibility or weigh evidence when considering a motion for summary judgment.  *Marino*, 358 F.3d at 247.  As Defendant has submitted the challenged information solely for the purpose of impeaching Plaintiff Russell Carbone's credibility in the context of Defendant's summary judgment motion, the Court will disregard it.  Plaintiffs do not suggest that information is confidential or that its mere presence on the docket might otherwise harm them.  The Court will therefore deny their cross-motion to strike as moot.

### c.  **Undue Influence**

In Count Two of their Amended Complaint, Plaintiffs assert a claim of "undue influence" and seek to set aside the March 17, 2010 transaction whereby Eleanor transferred the Property to Defendant.  (Am. Compl. ¶¶ 43-44, ECF No. 7).  The Supreme Court of New Jersey has described the concept of undue influence as "a mental, moral, or physical exertion of a kind and quality that

6

destroys the free will of the testator by preventing that person from following the dictates of his or her own mind as it relates to the disposition of assets, generally by means of a will or inter vivos transfer in lieu thereof." *In re Est. of Stockdale*, 196 N.J. 275, 302–03, 953 A.2d 454, 470 (NJ 2008) (citing *Haynes v. First Nat'l State Bank*, 87 N.J. 163, 176, 432 A.2d 890 (1981)).

New Jersey recognizes a shifting burden of proof for undue influence claims. (*Id.*). In the first instance, "[t]he burden of establishing undue influence rests with the party contesting the will [or transfer]." *In re Est. of Folcher*, 224 N.J. 496, 512, 135 A.3d 128, 137 (NJ 2016). In certain circumstances, however, the Court will recognize a presumption of undue influence and the burden will then shift to the proponent of the transfer to prove the absence of undue influence by a preponderance of the evidence. *Id.* The conditions necessary to trigger this shift vary depending on the type of transaction at issue. In the case of a will, challengers must demonstrate both "suspicious circumstances" as well as a "confidential relationship" between the testator and beneficiary. *In re Est. of Stockdale*, 196 N.J. at 303; *In re Est. of Folcher*, 224 N.J. at 512. Where, as here, the case involves an *inter vivos* transfer, "where one is giving away what one can still enjoy . . .a presumption of undue influence is raised more easily . . . All that is needed is a confidential relationship." *In re Est. of Penna*, 322 N.J. Super. 417, 424, 731 A.2d 95, 98–99 (App. Div. 1999).

Under New Jersey law, a confidential relationship "arises 'where trust is reposed by reason of the testator's weakness or dependence or where the parties occupied relations in which reliance is naturally inspired or in fact exists.'" *In re Est. of Milton*, No. A-2425-11T4, 2013 WL 1351907, at *4 (App. Div. Apr. 5, 2013) (quoting *Haynes v. First Nat'l State Bank of New Jersey*, 87 N.J. 163, 176 (1981)). "In determining whether such a relationship exists, the trial judge should consider family ties, friendship, trust, love, affection, the donor's delegation of authority over his

or her assets to the donee and the donor's reliance on the donee's superior knowledge." *DiMeglio v. DiMeglio*, No. A-0209-06T5, 2007 WL 3396472, at \*5 (App. Div. Nov. 16, 2007) (citing *Pascale v. Pascale*, 113 N.J. 20, 32, 549 A.2d 782 (1988)).   In short, "[i]n order to find a confidential relationship, 'the circumstances [must] make it certain that the parties do not deal on equal terms.'"   *In re Est. of Milton*, 2013 WL 1351907 at \*4 (quoting *In re Codicil of Stroming*, 12 N.J. Super. 217, 224 (App. Div.), certif. denied, 8 N.J. 319 (1951)).   Having carefully considered the motion record, the Court finds that "reasonable minds could differ", *O'Toole*, 203 F. Supp. 3d at 463, as to the existence of a confidential relationship between Defendant and Eleanor during the relevant time period.   The record reflects that, as the only child who lived near his parents, Defendant provided his mother with significant assistance both before and after his father's death.   (Def. Statement of Facts ¶ 25-26, ECF No. 90-2; Plaintiffs' Responsive Counterstatement of Material Facts ¶ 7, ECF No. 93).   While she did not depend on Defendant for daily care, (Def. Statement of Facts ¶¶ 27-29, ECF No. 90-2), she relied on him enough that, when viewed in conjunction with their familial relationship, Defendant's superior legal knowledge, and the nature of the transaction (i.e., Eleanor transferred ownership of the Property to Defendant, despite the fact she planned to remain living there), this issue must go to the finder-of-fact for resolution.

Defendant argues that, even if the Court were to find that he shared a confidential relationship with Eleanor with regard to the 2010 transfer, summary judgment would nonetheless be appropriate, as the undisputed facts demonstrate that the transfer involved no undue influence. (Def. Br. at 24-25, ECF No. 90-1).   With regard to an inter vivos transfer, once the presumption of undue influence arises, "[t]he donee must overcome that presumption by clear and convincing evidence showing 'not only that no deception was practiced therein, no undue influence used, and

that all was fair, open and voluntary, but that it was well understood.'" *In re Est. of Sydlar*, No. A-1467-09T2, 2010 WL 5058517, at *2 (App. Div. Dec. 13, 2010) (quoting *Pascale*, 113 N.J. at 29-31) (cleaned up).  As significant questions of fact remain regarding the Eleanor's understanding of the 2010 transaction, as well as its very nature, summary judgment would be inappropriate.  Most significantly, there is a question of fact as to whether Eleanor intended for Defendant to hold title to the Property in trust, as opposed to transferring it to him without restriction.  The evidence on this point is contradictory.  For instance, whereas the deed reflects an unrestricted transfer to Defendant, Eleanor testified that she believed the Property was still her house.  (Eleanor Carbone Dep. Tr. at 21:17-18, ECF No. 90-4) ("[H]e was holding the title but it was my house.").  Similarly, Eleanor testified repeatedly about her understanding that Defendant was supposed to make some sort of distribution to his brothers upon selling the Property.  While she testified that the specifics of that distribution would be left to Defendant, she also signed the 2020 Trust Document, acknowledging her allegedly contemporaneous understanding that Defendant would keep 50% of any sales proceeds while giving each Plaintiff 25%.  (Eleanor Carbone Dep. Tr. at 46:5-47:10; 53:13-55:15, ECF No. 90-4; Plaintiffs' Responsive Counterstatement of Material Facts ¶ 18, Ex. A).  It also bears noting that Eleanor testified, repeatedly, that Defendant himself prepared that document and asked her to sign it.  (Eleanor Carbone Dep. Tr. at 54:9-55:21, ECF No. 90-4).   As to its nature as a voluntary transaction, Defendant represents that Eleanor came to him and proposed the title transfer, (Cert. of John S. Carbone ¶ 7, ECF No. 90-3), whereas Eleanor testified that it was "probably" Defendant's idea.  (Eleanor Carbone Dep. Tr. at 58:7-16, ECF No. 90-4).  Defendant represents that the transfer was open, and that Plaintiffs were notified of it contemporaneously, (Cert. of John S. Carbone ¶ 15, ECF No. 90-3), but Plaintiffs claim otherwise, (Cert. in Opposition ¶ 11, ECF No. 93-1) and the materials Defendant cites in support of that

proposition offer dubious support. (Def. Br. at 24-25, ECF No. 90-1). Based on the record the parties have presented to the Court, summary judgment would be inappropriate on Plaintiffs' undue influence claim.

### d. **Trust-Related Claims**

Whereas Plaintiffs' undue influence claim challenges the validity of the March 17, 2010 transfer, the bulk of Plaintiffs' claims address the nature of that transaction (i.e., whether Defendant acquired the Property in trust for himself and his brothers or, alternatively, as an inter vivos gift free of restrictions) and Defendant's entitlement to the proceeds of the sale of the Property. As the question of whether that transfer created a trust is integral to several of Plaintiffs' causes of action, the Court must determine whether it may resolve that issue on summary judgment.

Defendant argues that there are two methods for creating a trust under New Jersey law: (1) pursuant to the Uniform Trust Code, as adopted by the New Jersey Legislature and codified at N.J.S.A. 3B:31-1, et seq.; and (2) in accordance with common law principles. (Def. Br. at 10-18, ECF No. 90-1). Plaintiffs do not argue otherwise. (*Generally* Pl. Opp Br., ECF No. 92). The Court notes, however, that the Uniform Trust Code did not go into effect until July 17, 2016, and thus it is unclear whether it would apply to the March 17, 2010 transfer. Even if it did, the Uniform Trust Code would not support the creation of a trust in connection with the transfer. Under that statute, a trust may be created by:

> a. transfer of property under a written instrument to another person as trustee during the settlor's lifetime . . .;
>
> b. written declaration by the owner of property that the owner holds identifiable property as trustee; or
>
> c. written exercise of a power of appointment in favor of a trustee.

N.J.S.A. 3B:31-18.  Here, nothing in the record suggests that Eleanor executed a written instrument transferring the Property to Defendant as trustee or appointing Defendant as a trustee pre-transfer. While Eleanor did sign the 2020 Trust Document, she was not the "owner" of the Property at that point, having transferred title to Defendant in 2010.  The Court will therefore focus its analysis on the New Jersey common law requirements for trust creation.

The Supreme Court of New Jersey has observed that the question of whether a trust has been created "'turns almost invariably on proof of intention since the trust arises upon mere expression of the requisite intention.'"  State v. U.S. Steel Co., 12 N.J. 51, 58, 95 A.2d 740, 744 (1953) (citation omitted).  Critically, it is not necessary for parties to use the word "trust" to "express the requisite intention."  *Id.*  Indeed, "[t]he manifestation [of that intent] may be by conduct, or by words, and no particular form of words is necessary."  *Coffey v. Coffey*, 286 N.J. Super. 42, 50, 668 A.2d 76, 80 (App. Div. 1995) (citation omitted).  As one Judge in this District noted, in addition to that intent to create a trust:

> an express trust involves three elements: (1) a trustee, who holds the trust property and is subject to duties to deal with it for the benefit of one or more others; (2) one or more beneficiaries, to whom and for whose benefit the trustee owes the duties with respect to the trust property; and (3) trust property, which is held by the trustee for the beneficiaries.

*Flint Ink Corp. v. Calascibetta*, No. 06-cv-2517 (GEB), 2007 WL 2687415, at *6 (D.N.J. Sept. 10, 2007).

Here, the parties' disagreement centers on whether Eleanor manifested an intent to create a trust when she transferred the Property to Defendant in 2010.  The other elements (i.e., the existence of a potential trustee, beneficiaries, and trust property) do not appear to be in legitimate dispute.  As noted in Section III(c), above, fact questions abound regarding Eleanor's intentions concerning the March 17, 2010 transfer, and prevent the Court from resolving this issue in the

summary judgment context.  For instance, Eleanor testified that, even though the lawyer who prepared the deed for that transfer and witnessed its execution did not articulate it himself, Defendant nevertheless "knew that basically the house was [hers] and that he was to compensate his brothers after [she] died or after we sold the house." (Tr. at 29:18-21, ECF No. 90-4).  Eleanor also appeared to testify that her late husband, whom the parties agree died in 2009, was present at the time of the 2010 transfer and instructed Defendant to "be fair" to Plaintiffs with regard to the distribution of the Property.  (*Id.* at 45:12-17).  Eleanor further testified that Defendant was required to make a distribution of any proceeds from the sale of the Property, though the specifics of that distribution were left to his discretion.  (*Id.* at 46:5-47:10).  Later, she testified that she executed a document in 2020, at Defendant's urging, purporting to retroactively describe her intentions for a specific division of those proceeds.  (*Id.* 54:8-55-21; Plaintiffs' Responsive Counterstatement of Material Facts, Ex. A, ECF No. 90-3).  Given the inconsistent nature of Eleanor's testimony, and other discrepancies in the parties' accounts, summary judgment is not appropriate.

As the Court cannot resolve the trust issue on summary judgment, neither can it resolve Defendant's challenges to the causes of action that are dependent on the existence of a trust.  Thus, the court finds that summary judgment would be inappropriate with regard to Plaintiffs' claims for breach of fiduciary duty (Count One), accounting (Count Three), conversion (Count Seven), unjust enrichment (Count Eight), and constructive trust (Count Nine).

> ### e.  Plaintiffs' Claim for Breach of the Implied
> ###     Covenant of Good Faith and Fair Dealing

In the Fourth Count of their Amended Complaint, Plaintiffs allege that Defendant violated an implied covenant of good faith and fair dealing.  (Am. Compl. ¶ 46, ECF No. 7).  "Under New Jersey law, in every contract there is an implied covenant that 'neither party shall do anything

which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract; in other words, in every contract there exists an implied covenant of good faith and fair dealing.'" *Harmon v. Borough of Belmar*, No. 17-cv-2437 (PGS), 2020 WL 833061, at *5 (D.N.J. Feb. 20, 2020) (quoting *Wade v. Kessler Inst.*, 343 N.J. Super. 338, 345 (App. Div. 2001); *accord Fields v. Thompson Printing Co.*, 363 F.3d 259, 270 (3d Cir. 2004) (citations omitted). "To recover for breach of the implied covenant, a plaintiff must prove that: (1) a contract exists between the parties; (2) the plaintiff performed under the terms of the contract; (3) the defendant acted in bad faith with the purpose of depriving the plaintiff of rights or benefits under the contract; and (4) the defendant's actions caused the plaintiff to sustain damages." *Luongo v. Vill. Supermarket, Inc.*, 261 F. Supp. 3d 520, 531-32 (D.N.J. 2017) (citation omitted).

Plaintiffs' Amended Complaint does not specify (1) what contract they entered into with Defendant; or (2) how Defendant allegedly performed that contract in bad faith, to Plaintiffs' detriment. (*Generally* Am. Compl., ECF No. 7). In their opposition to Defendant's motion for summary judgment, Plaintiffs suggest, without saying so explicitly, that their implied covenant claim refers to Defendant's alleged agreement with Eleanor to be "fair" to Plaintiffs in exchange for title to the Property. (Opp. Br. at 20, ECF No. 92). It further appears that Plaintiffs, who are acting *pro se*, are asserting this claim as third-party beneficiaries to that purported contract. In light of Eleanor's testimony, as described above, the Court finds that it may not resolve this claim on summary judgment. For instance, Eleanor testified that her husband instructed Defendant to be "fair" to his brothers in connection with the transfer. (Eleanor Carbone Dep. Tr. at 29:18-21, ECF No. 90-4). Eleanor also testified that, while that directive gave Defendant discretion as to the amount of any future distribution, it required him to distribute *something*. (*Id.* at 46:5-47:10). As questions of material fact exist regarding (1) the validity and terms of any contract between Eleanor

and Defendant, and (2) whether Defendant acted in good faith when performing under that contract, this claim must be resolved at trial.

### f.  **Plaintiffs' Fraud Claim**

In the Sixth Count of their Amended Complaint, Plaintiffs allege that Defendant engaged in fraud.  Under New Jersey law, "the five essential elements to a claim of common law fraud are: '(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'"  *Suarez v. E. Int'l Coll.*, 428 N.J. Super. 10, 28, 50 A.3d 75, 85 (App. Div. 2012) (quoting *Gennari v. Weichert Co. Realtors,* 148 *N.J.* 582, 610, 691 *A.*2d 350 (1997)).  While Plaintiffs made allegations regarding Defendant's dishonesty and nefarious planning, generally, (*e.g.*, Am. Compl. ¶ 28, ECF No. 7), the Amended Complaint is silent as to the conduct that might satisfy the elements of a fraud claim.  (*Generally id.*).  In their opposition to Defendant's motion for summary judgment, Plaintiffs argue, without citation, that "[D]efendant surreptitiously manipulated, lied, maneuvered, and engineered the scheme to def[r]aud Eleanor and Plaintiffs out of the family home . . ."  (Opp. Br. at 20, ECF No. 92).  Plaintiffs have not identified any specific instances of such conduct, let alone presented evidence of the same in opposition to Defendant's motion.  The Court therefore finds that Defendant is entitled to summary judgment on Plaintiffs' fraud claim.

### g.  **Plaintiffs' Claim for Waste**

Plaintiffs assert a claim for "waste" in Count Five of their Amended Complaint.  New Jersey statutory law creates a cause of action for waste.  *Generally* N.J.S.A.  2:A65-1, et seq.  Oversimplified, those statutes give certain individuals, such as landlords, recourse when others,

such as tenants, take actions that diminish the value of their property.  *Id.*  While there is little

recent case law on the subject, one court has summarized the claim as follows:

> New Jersey Courts have recognized two main varieties of waste, voluntary and permissive. Voluntary waste, which is sometimes also referred to as active waste, is an affirmative wrong act by a tenant. This would include such acts a pulling down buildings or chopping down trees during the tenancy.
>
> On the other hand, permissive waste is the failure to act to protect the property. For example, allowing a roof to leak and doing nothing, leading to interior water damage, could be considered permissive waste. "A tenant for life is bound to repair only to the extent of preventing permissive or actual waste. In fulfillment of this duty, it is said that he must keep the premises in as good repair as when his estate began, not excepting ordinary wear or tear.

*Est. of Johnston v. Dir., Div. of Tax'n*, No. 010286-2015, 2018 WL 3018883, at *5 (N.J. Tax Ct.

June 15, 2018) (citing *In re Estate of Roth*, 139 N.J. Eq. 588, 596 (Prerog. Ct. 1947).  Here, it

appears Plaintiffs contend that Defendant engaged in permissive waste by allowing the Property

to deteriorate after acquiring title in 2010.  Assuming the doctrine of waste applies in the

circumstances of this case (i.e., where Defendant is the deeded owner of a property rather than a

tenant), and Plaintiffs have offered no explanation of how it might, Defendant is correct in arguing

that Plaintiffs have not presented any evidence establishing (1) that Defendant engaged in waste;

or (2) that such conduct resulted in damages.

    While Defendant observes that Plaintiffs "submit[ed] photographs of what they allege is

the . . . Property taken by unidentified persons at unspecified times in various states of alleged

'deterioration'", (Def. Br. at 29, ECF No. 90-1), it is unclear what photographs Defendant is

referring to.  Plaintiffs have not made them part of the summary judgment record.  Nor have they

otherwise addressed their waste claim in opposing Defendant's motion.  Indeed, it appears they

have abandoned their waste claim altogether.  As Plaintiffs failed to establish that Defendant

engaged in waste, let alone established that such conduct resulted in damages, Defendant is entitled to summary judgment on Count Five of the Amended Complaint.

### IV.    <u>CONCLUSION</u>

Based on the foregoing, the Court will grant Defendant's motion for summary judgment, (ECF No. 90), in part and deny it in part.  Specifically, the Court **GRANTS** Defendant's motion to as Counts Five (Waste) and Six (Fraud).  The Court **DENIES** Defendant's motion in all other respects.  The Court also **DENIES** Plaintiffs' cross-motion to strike, (ECF No. 92), as moot.  A separate form of Order will follow this Opinion.

**SO ORDERED**

<u>s/ Cathy L. Waldor</u>
**CATHY L. WALDOR, U.S.M.J.**

**Date:**  April 21, 2025
